Filed 4/3/23 (unmodified opinion attached)

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>YAROSLAV VIKTOROVIC SHKRABAK,<br><br>    Defendant and Appellant. | C096266<br><br>(Super. Ct. No. 19FE020462)<br><br>MODIFICATION OF<br>OPINION<br><br>[NO CHANGE IN<br>JUDGMENT] |

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts I and III.

THE COURT:

On the court's own motion, it is ordered that the opinion filed herein on March 28, 2023, be modified as follows:

1.      On page 5 at the conclusion of the first paragraph, after the sentence that reads -- 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (*Id*., subd. (c)(2).) -- add a sentence that reads as follows:
The parties do not argue that Senate Bill No. 81 does not apply to the three strikes law in this instance; accordingly, we will proceed to the substantive merits of defendant's claim.

This modification does not change the judgment.

FOR THE COURT:


_____/s/_____
Duarte, Acting P. J.


_____/s/_____
Renner, J.


_____/s/_____
Boulware Eurie, J.

2

Filed 3/28/23 (unmodified opinion)
<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C096266 |
| Plaintiff and Respondent, | (Super. Ct. No. 19FE020462) |
| v. | |
| YAROSLAV VIKTOROVIC SHKRABAK, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Ernest W. Sawtelle, Judge. Remanded for resentencing.

Heather E. Shallenberger, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Eric L. Christoffersen, Supervising Deputy Attorney General, Craig S. Meyers, Deputy Attorney General for Plaintiff and Respondent.

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts I and III.

1

A jury found defendant Yaroslav Viktorovic Shkrabak guilty of assault with force likely to produce great bodily injury and the trial court doubled his sentence based on a prior strike conviction. Defendant now argues that the trial court abused its discretion when it declined to strike his prior strike conviction consistent with *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*) because the court failed to afford "great weight" to the influence his mental illness had on the current offense.[1] In supplemental briefing, defendant also argues he is entitled to a recalculation of his custody credits to include time he spent in Napa State Hospital after the trial court found him incompetent to stand trial. We disagree with the former argument, but agree with the latter, and will remand the case for a recalculation of defendant's custody credits.

## BACKGROUND

On the day of the offense, defendant was angry at his mother, saying she was "evil" and deserved to die. She left the house with defendant's younger brother, who was 12 or 13 years old at the time. She returned an hour later, and defendant said, "Oh, you're back. You didn't kill yourself. Aren't you strong enough to kill yourself?" She went to the kitchen to call 911. Defendant put her in a chokehold and the two struggled. As they struggled, defendant "body-slammed" his mother through a sliding glass door. She was cut on the back of her head.

The prosecution charged defendant with a single count of assault with force likely to produce great bodily injury. (Pen. Code, § 245, subd. (a)(4).)[2] The prosecution also alleged defendant personally inflicted great bodily injury (§ 12022.7) and had a prior conviction for assault with a deadly weapon (§ 245, subd. (a)(1)) from 2018. The 2018

---

[1] In addition to the *Romero* motion, defendant initially raised an issue related to the allegations in the charging document. In his reply brief, he notes his original position on the issue was incorrect; we consider the issue withdrawn.

[2] Undesignated statutory references are to the Penal Code.

conviction involved an incident in which defendant had attacked his father with a knife at home.

Before trial, defendant filed a *Romero* motion to dismiss the prior conviction. The motion noted defendant "is sever[e]ly mentally ill and suffers from a serious mental illness." At the hearing on the motion, defendant explained he had been diagnosed with schizophrenia. The prosecutor noted the prior conviction occurred one year before the attack in the current case and that defendant had been on probation for the prior conviction at the time of the current offense. She also noted that, while in pretrial detention, defendant had sent several letters to the district attorney's office threatening violence and sexual assaults against prosecutors and his former defense attorney. Defendant claimed the letters were not threats and were only asking for mental health diversion.

The trial court explained it was considering the age of the prior conviction, the threatening letters defendant had sent, the facts underlying the prior conviction, defendant's age at the time of the current offense, and defendant's employment prospects. Considering defendant's mental illness, the court noted it did not have any records to indicate the severity of the illness, but said that for the purposes of the motion, it would assume the illness was legitimate.

The court considered defendant's danger to society, saying: "You know, that's a pretty serious offense in the prior. He has a pretty serious offense currently. The jury hasn't found you guilty, I recognize, but the prior case you were convicted for, there appear to be significant threats that have been made in this currently that are pending. I don't know if there are any charges filed on those as to threats to the DA. But looks like you could certainly be a danger to society."

The court denied the motion, finding defendant fell "within the spirit of the three strikes law, especially when you consider how recent, between 2018 and the new offense in 2019. It does seem to the Court that definitely, this is really a textbook case of how the

3

defendant does fall within the parameters and spirit of the three strikes law; so the Court will, at this time, deny the motion, or the request to strike the strike under 1385, under Romero."

The jury found defendant guilty of the assault count and found true the allegation that he personally inflicted great bodily injury on the victim. Defendant admitted the prior conviction. The trial court imposed a 14-year sentence, which included the midterm on the assault conviction, doubled for the prior conviction. The court's custody credit calculations did not include the days defendant spent in Napa State Hospital receiving treatment to restore him to competency before trial.

Defendant filed a notice of appeal in May 2022. The case was fully briefed on November 21, 2022, and assigned to this panel shortly thereafter. The parties waived argument and the case was submitted on January 30, 2023. We granted defendant's request to file supplemental briefing and vacated submission of the case. The case was fully briefed on March 7, 2023, and re-submitted shortly thereafter.

## DISCUSSION

### I

### Romero *Motion*

Defendant argues the trial court abused its discretion when it denied the *Romero* motion because the newly amended section 1385 requires the court to " 'consider and afford great weight to evidence offered by the defendant to prove that . . . [t]he current offense is connected to mental illness.' " He argues the court failed to find his illness was connected to his offense and also failed to find "substantial evidence of [his] dangerousness to public safety" in the appropriate context, which he argues is when he was "properly treated" for his mental illness. We see no abuse of discretion.

Our Supreme Court held in *Romero* that trial courts have discretion under section 1385 to dismiss a prior strike when a court finds a defendant falls outside the spirit of the three strikes law. (*Romero*, *supra*, 13 Cal.4th at pp. 529-530.) Senate Bill No. 81 (2021-

4

2022 Reg. Sess.) amended section 1385, subdivision (c) to clarify how courts should exercise that discretion; in particular, the statute now lists several "mitigating circumstances" and requires that the court "consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances . . . are present." Among those circumstances is whether "[t]he current offense is connected to mental illness." (§ 1385, subd. (c)(2), (D).) "Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (*Id*., subd. (c)(2).)

"While a court must explain its reasons for striking a prior [citation], no similar requirement applies when a court declines to strike a prior." (*In re Large* (2007) 41 Cal.4th 538, 550.) "The court is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.) A court's "failure to dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard." (*People v. Carmony* (2004) 33 Cal.4th 367, 374.) "[A] trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances." (*Id*. at p. 378.)

Citing *People v. Martin* (1986) 42 Cal.3d 437 and *In re Palmer* (2018) 27 Cal.App.5th 120, which construed different statutes involving the phrase "great weight," defendant argues section 1385 required the trial court to find "substantial evidence of . . . [defendant's] current dangerousness to public safety." Assuming without deciding that defendant's interpretation of amended section 1385 is correct, we see no abuse of discretion.

The trial court expressly assumed the validity of defendant's asserted mental illness diagnosis in the hearing on the *Romero* motion. The court then proceeded directly

5

to discuss defendant's dangerousness to public safety. In particular, the court noted the seriousness of the current offense and the prior offense, the threats defendant had made to the district attorney's office, and the recency of the prior offense. Each of these factors suggests defendant posed a current risk to public safety, and each factor is supported by substantial evidence.

In the prior offense, defendant brandished a knife and attacked his father without any apparent provocation. He was placed on probation and proceeded to violate probation by committing the current offense, in which he threatened his mother, placed her in a chokehold, and slammed her through a sliding glass door, cutting her head. After he was incarcerated for the current offense, he continued to make violent threats from jail.

Although the trial court did not explicitly state it was affording "great weight" to defendant's mental illness, the order and content of its analysis make clear that it did. Section 1385 requires a discussion of a defendant's risk to public safety *only if* the defendant has offered proof that the current offense is connected to mental illness. (§ 1385, subd. (c).) Accordingly, had the court here *not* given significant weight to defendant's mental illness and considered it connected to the offense, the court would not have proceeded to the second step of the statutory analysis. And the court *expressly* assumed the relevance and significance of defendant's mental illness at the outset, despite the lack of records substantiating the condition or its connection to the current offense and defendant's statutory burden to offer proof of such a connection. (*Ibid.*) Thus, although the court discussed other factors in its *Romero* analysis, we disagree that defendant's mental illness was not given elevated importance in the decision.

Nor do we agree the trial court was required to consider defendant's "current dangerousness to public safety *when properly treated for his mental illness*" (italics added), as defendant repeatedly contends. Defendant did not offer any evidence of his treatment history or intent to receive treatment at the hearing or in his motion papers, and

6

nothing in the statutory language of section 1385 requires such an assumption. That the court did not discuss this hypothetical situation was not an abuse of discretion.

II

*Custody Credits*

In supplemental briefing, defendant argues he is entitled to actual and conduct custody credits for the time he spent in Napa State Hospital receiving competency treatment before trial.[3]

Historically, "section 4019 has provided that defendants confined in specific facilities and various settings may earn conduct credit for performing assigned labor and for complying with applicable rules and regulations." (*People v. Yang* (2022) 78 Cal.App.5th 120, 125 (*Yang*).) In 2018, Senate Bill No. 1187 (2017-2018 Reg. Sess.) (Senate Bill No. 1187) amended section 4019 to allow defendants receiving competency treatment in county jail treatment facilities to receive conduct credit. (*Yang,* at p. 126.) "Although legislative analyses reflected the Legislature's express awareness that [incompetent to stand trial] defendants in a state hospital were not statutorily or constitutionally entitled to conduct credit under section 4019, the analyses disclosed no explanation why the Legislature—at that point—declined to similarly extend the availability of conduct credit to such defendants."[4] (*Id.* at pp. 126-127.)

Defendant argues he is entitled to receive conduct credits for his time receiving competency treatment in Napa State Hospital under equal protection principles, even though he was not confined to a county jail treatment facility, because he is similarly

---

[3] The Attorney General does not dispute that defendant is entitled to *actual* time credit and argues only that he should not receive *conduct* credit.

[4] Senate Bill No. 317 (2021-2022 Reg. Sess.) (Senate Bill No. 317) would later permit defendants receiving competency treatment in state hospitals to receive conduct credits. (*Yang, supra*, 78 Cal.App.5th at p. 127.) Defendant does not argue Senate Bill No. 317 applies retroactively to his case.

7

situated to the individuals covered by Senate Bill No. 1187 and there is no lawful justification for disparate treatment. We agree.

To establish a meritorious claim under the equal protection clause, a defendant must show " 'that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' " (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253; *In re Eric J.* (1979) 25 Cal.3d 522, 530.) "[A]n equal protection claim cannot succeed, and does not require further analysis, unless there is some showing that the two groups are sufficiently similar with respect to the purpose of the law in question that some level of scrutiny is required in order to determine whether the distinction is justified." (*People v. Nguyen* (1997) 54 Cal.App.4th 705, 714.) The inquiry is not whether groups are similarly situated for all purposes, but whether they are similarly situated with respect to the legitimate purpose of the particular law challenged. (*Cooley,* at p. 253.)

As the parties note, two recent cases with similar facts have considered whether defendants receiving competency treatment in state hospitals are similarly situated to those receiving treatment in county jails. In *People v. Orellana* (2022) 74 Cal.App.5th 319, the Sixth District Court of Appeal rejected an equal protection challenge similar to that in the current case, holding the two groups were not similarly situated. The *Orellana* court reviewed our Supreme Court's decision in *People v. Brown* (2012) 54 Cal.4th 314, which considered whether a legislative change that increased the rate at which prisoners could earn conduct credits applied to defendants who had served their time before the change, as well as to those who had served their time after the change. (*Id.* at p. 329.)

The Supreme Court found the two groups were not similarly situated, stating: " 'the important correctional purposes of a statute authorizing incentives for good behavior [citation] are not served by rewarding prisoners who served time before the incentives took effect and thus could not have modified their behavior in response. That prisoners who served time before and after former section 4019 took effect are not

8

similarly situated necessarily follows.' " (*People v. Orellana, supra*, 74 Cal.App.5th at p. 340.) The *Orellana* court read this passage to "effectively preclude[] the court from deeming two groups similarly situated for purposes of earning conduct credits when the time in custody preceded the availability of incentive based credits." (*Id.* at p. 341.)

The First District Court of Appeal reached a different conclusion in *Yang, supra,* 78 Cal.App.5th 120, holding that defendants in both state hospitals and county jails are subject to the same standards and procedures and receive treatment for the same purpose. (*Id.* at p. 129.) While the groups are placed in different locations, the *Yang* court concluded they are sufficiently similar to qualify for " 'some level of scrutiny' " under equal protection principles. (*Ibid.*) The court distinguished *Brown*, concluding, "Unlike the situation in *Brown*, defendant here is not advocating the position that [incompetent to stand trial] defendants whose confinement for competency treatment predated Senate Bill 1187's effective date are similarly situated to [incompetent to stand trial] defendants whose confinement postdated the law's effective date. Instead, the instant case concerns the disparate treatment of two groups of [incompetent to stand trial] defendants whose confinement for competency treatment postdated a statutory amendment that authorizes conduct credits only for those committed to a jail facility but not for those committed to a state hospital." (*Id.* at pp. 130-131.)

After finding incompetent to stand trial defendants confined in state hospitals similarly situated to incompetent to stand trial defendants confined in county jails, the *Yang* court applied strict scrutiny to section 4019. The court reviewed the California Supreme Court decisions in *People v. Saffell* (1979) 25 Cal.3d 223, *People v. Sage* (1980) 26 Cal.3d 498, and *People v. Caruso* (1984) 161 Cal.App.3d 13, each of which applied strict scrutiny to analyze disparate treatment for the award of conduct credits, and concluded the same standard should apply there. (*Yang, supra*, 78 Cal.App.5th at p. 133.) The *Yang* court also rejected the Attorney General's argument that rational basis review should apply, where, as in the present case, the Attorney General relied on

9

*People v. Ward* (2008) 167 Cal.App.4th 252, *People v. Rajanayagam* (2012) 211 Cal.App.4th 42, and *People v. Kennedy* (2012) 209 Cal.App.4th 385 without discussing applicable Supreme Court precedent.  (*Yang,* at p. 134.)

Applying strict scrutiny, the *Yang* court concluded the state could not establish it had a " '*compelling* interest which justifies the law and then demonstrate that the distinctions drawn by the law are necessary to further that purpose.' " (*Yang, supra*, 78 Cal.App.5th at p. 136.)  As in the present case, the Attorney General proffered two possible justifications for the law:  (1) conduct credit creates an incentive for good behavior, and such incentives are unnecessary in state hospitals (*ibid*.), and (2) county jail treatment is an interim measure before transfer to a state hospital, and defendants who are confined in county jails "are not so ill and disoriented that they are incapable of responding to credit incentives" (*id.* at p. 137).

The *Yang* court rejected both justifications, first observing that "state hospitals-- like jails--are structured environments governed by various rules.  [Citations.]  Thus, the same interest in incentivizing good behavior appears equally reasonable and workable for defendants receiving competency treatment in a state hospital where patients with varying issues and/or criminal histories or proclivities are housed." (*Yang, supra*, 78 Cal.App.5th at p. 136.)  And, as noted above, Senate Bill No. 317 recently extended the availability of conduct credit to state hospital defendants, undermining the Attorney General's purported rationale for distinguishing the two groups.  (*Yang,* at p. 136.)

Second, the court noted "[e]very defendant found incompetent to stand trial meets the same standard for commitment (§ 1367, subd. (a)), and  . . . may be committed to either a jail facility or a state hospital depending on the availability of a bed." (*Yang, supra*, 78 Cal.App.5th at p. 137.)  Thus, it does not make sense to draw a distinction between the two groups based on the extent of their impairments.  (*Ibid.*)  Accordingly, the court concluded the defendant was entitled to conduct credit for the time he was in Napa State Hospital receiving treatment to restore him to competency.  (*Id.* at p. 138.)

10

We find the analysis in *Yang* more persuasive than *Orellana*. *Orellana* viewed "*Brown* as compelling the conclusion that [incompetent to stand trial] defendants receiving competency treatment in a jail facility and [incompetent to stand trial] defendants receiving competency treatment in a state hospital are not similarly situated because the former group was incentivized to earn conduct credit after Senate Bill 1187's enactment while the latter group was not." (*Yang, supra*, 78 Cal.App.5th at p. 131.) As *Yang* notes, however, "the disparate treatment between these two groups of [incompetent to stand trial] defendants is precisely what is being challenged as unjustified." (*Ibid.*) Defendant's ability to make a claim based on disparate treatment should not be contingent on a legislative distinction between two groups if the distinction itself is the target of the claim. Thus, the two groups are sufficiently similarly situated to apply equal protection principles.

We likewise agree with *Yang* that the Attorney General's asserted rationales for the disparate treatment—virtually identical in both cases--do not make sense. This is particularly so after the passage of Senate Bill No. 317, which was specifically intended to allow defendants "committed to a state hospital . . . because they have been found [incompetent to stand trial] . . . to earn conduct credits in the same manner as if they were in county jail." (Off. of Assem. Floor Analyses, 3d reading analysis of Sen. Bill No. 317 (2021-2022 Reg. Sess.) as amended Sept. 1, 2021, p. 1.) Given this reasoning, we see little support for the Attorney General's purported legislative justifications for the disparate treatment and conclude they do not provide a compelling interest that justifies the disparity. Defendant is entitled to actual and conduct credits accrued for the time spent in Napa State Hospital receiving treatment to return him to competence. Consequently, we will remand the mater for resentencing so the trial court may recalculate defendant's custody credits.

11

### III

### *Abstract of Judgment*

Finally, though not raised by the parties, we note a clerical error in the abstract of judgment. At sentencing, the trial court imposed a five-year sentence for defendant's prior conviction under section 667, subdivision (a). In section three of the abstract of judgment, however, the "time imposed" column indicates that four years were imposed, rather than five, although the total sentence in the section and in section eight of the abstract is correct. We will direct the trial court to correct section three to reflect the oral pronouncement.

### DISPOSITION

The matter is remanded for resentencing. The trial court is directed to recalculate defendant's custody credits to include actual and conduct credits under section 4019 for time spent in Napa State Hospital. The trial court is directed to update the abstract of judgment, correct section three of the abstract of judgment, and forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.


         /s/
         Duarte, Acting P. J.


We concur:


   /s/
Renner, J.


   /s/
Boulware Eurie, J.


12